709 So.2d 447 (1997)
Ex parte Elton G. DYESS, Jr., and Susie Dyess.
(In re Elton G. DYESS, Jr., and Susie Dyess v. AMERICAN HARDWARE INSURANCE GROUP, INC.).
1960585.
Supreme Court of Alabama.
October 24, 1997.
Rehearing Denied January 16, 1998.
*448 John T. Alley, Jr., of Alley & Waters, P.C., Montgomery, for petitioners.
Robert C. Black, Jr., of Hill, Hill, Carter, Franco, Cole & Black, P.C., Birmingham, for respondent.
HOOPER, Chief Justice.
Elton G. Dyess and his wife Susie Dyess petition for a writ of mandamus ordering Judge Charles Price of the Montgomery Circuit Court to vacate his order compelling them to arbitrate claims they brought in a lawsuit against American Hardware Insurance Group, Inc. ("American Hardware"). An insurance policy between Jack Ingram Motors, Inc., and American Hardware calls for arbitration of certain claims. The Dyesses claim that they cannot be compelled to arbitrate their claims because they did not sign the insurance policy, or any agreement that required them to arbitrate. The trial court granted American Hardware's motion to compel arbitration. We deny the Dyesses' petition.
Elton Dyess went to Jack Ingram Motors, an automobile dealership, to purchase a car. While he was test-driving an automobile belonging to Jack Ingram Motors, he was involved in an accident; Dyess says the accident was caused by an unknown motorist who, Dyess says, turned left in front of him and caused him to go left of the center line and strike another car. Dyess was injured in the accident. Because of this accident, Dyess sued American Hardware, claiming benefits under the uninsured motorist provision of its policy with Jack Ingram Motors.
Susie Dyess joined her husband's lawsuit, making a claim for loss of consortium against a fictitiously named defendant (the unknown driver of the car that turned left in front of Elton Dyess). The trial judge's order compelling arbitration directs both Elton and Susie Dyess to arbitrate their claims. Susie Dyess has made no claim against American Hardware; therefore, she has no claim now pending that may be the subject of an order compelling arbitration. We do not know what Susie Dyess would arbitrate with American Hardware, given that she has made no claim against American Hardware. Susie Dyess's claim is separate from her husband's claim, but it is also derivative. Weekley v. State Farm Mut. Auto. Ins. Co., 537 So.2d 477 (Ala.1989).[1] Insofar as damages are concerned, her loss of consortium claim is independent of her husband's claim; however, as to the question whether she in fact has a claim, it is derivative. If her husband cannot sustain a claim against the fictitiously named defendant, then she cannot either. However, as to the uninsured motorist provision of the American Hardware policy, her claimed loss of consortium would not be compensable as a bodily injury. Weekley, supra, at 479-80. This Court does not have the policy before it; therefore, we must assume that Susie Dyess, recognizing her claim as a separate one not covered by the American Hardware policy, decided to ask for no relief in the mandamus petition. The mandamus petition makes no mention of this distinction and does not request relief as to that portion of the trial court's order purporting to compel Susie Dyess to arbitrate her claim. Because Susie Dyess has no claim against American Hardware, that portion of the trial court's order compelling arbitration would seem to have no effect as to her.
Jack Ingram Motors is the insured under a policy with American Hardware. The policy contains an uninsured motorist provision, which contains an arbitration clause. This clause reads:
"(1) If we and an `insured' disagree whether the `insured' is legally entitled to recover damages from the owner or driver of an *449 `uninsured motor vehicle' or do not agree as to the amount of damages that are recoverable by that `insured', then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration....
"(2) This arbitration provision will not apply if legal action has been commenced by the `insured' against the owner or operator of an `uninsured motor vehicle'."
Dyess did not sign this provision calling for the arbitration of claims under the policy. Initially, the adjuster for American Hardware, Tonya Roberts, denied coverage for Elton Dyess. She claimed that Dyess was not an "insured" under the liability portion of the policy. Later, American Hardware recognized that this denial was a mistake, because Roberts had failed to realize that Dyess was covered under the "medical pay" and the "uninsured motorist" portions of the policy.
After Dyess was denied coverage, he sued American Hardware, alleging breach of contract, bad faith, fraud, and the tort of outrage. The parties had attempted to resolve the dispute before Dyess invoked the litigation process. In response to a discovery request, American Hardware produced for Dyess a copy of the policy issued to Jack Ingram Motors. Dyess demanded payment of the policy limit of $120,000 and provided copies of his medical bills. American Hardware responded by asking for copies of Dyess's medical records so that it could verify the kind of treatment Dyess had received. American Hardware subsequently answered, but it continued to express an interest in resolving the dispute outside the litigation process. Robert Black, the attorney for American Hardware, signed an affidavit stating that he had informed counsel for Elton Dyess that the fact that American Hardware was filing the answer did not mean that American Hardware was no longer interested in continuing to try to resolve the matter. He also stated that he informed counsel for Dyess that he filed an answer only to get his name on the record so that he would receive court notices and the like.
Dyess moved to compel responses to discovery requests he had filed with the complaint. At that point, American Hardware filed a "Motion to Stay Judicial Proceedings and to Compel Arbitration." Dyess responded to this motion; the trial judge entered an order staying the proceedings and requiring the Dyesses to arbitrate their claims. The Dyesses then filed this petition for the writ of mandamus, seeking to have the order vacated.
Elton Dyess argues that he should not be required to arbitrate because he had signed no agreement with American Hardware and, therefore, he says, is not subject to the arbitration clause. Dyess also argues that, even if he otherwise should be subject to the arbitration clause, then, by its own terms, the clause should not apply to his claims. Dyess also argues that his claims based on fraud, the tort of outrage, and bad faith should not be arbitrated because, he argues, the arbitration clause applies only to a dispute concerning the amount of damages or a dispute as to whether an insured is legally entitled to damages. In other words, he claims that the clause contains exceptions in which arbitration would not apply and that his case comes within one of those exceptions. Dyess also claims that American Hardware, before it asked for arbitration, had substantially invoked the litigation process and, therefore, had waived any right to compel arbitration. Dyess also argues that the arbitration clause in this case is unenforceable because, he says, it appears in a contract, or is being applied to a claim, that did not involve interstate commerce.
A petition for a writ of mandamus is the appropriate means by which to challenge a trial court's order compelling arbitration. Ex parte Gates, 675 So.2d 371, 374 (Ala. 1996). "Mandamus is an extraordinary remedy and requires a showing that there is: `(1) a clear right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'" Id.
Under traditional principles of Alabama contract law and federal contract law, Dyess *450 could be considered a third-party beneficiary of the policy. As a third-party beneficiary, he would be subject to the arbitration clause even though he did not sign the policy. He may not pick and choose the provisions of the policy that he wants to follow. His case does not clearly fall within any of the exceptions set out within the arbitration clause. American Hardware did not waive its right to demand arbitration by substantially invoking the litigation process. Finally, this transaction  i.e., the transaction by which American Hardware provided insurance to Jack Ingram Motors  involved interstate commerce. Given the extraordinary nature of the writ of mandamus, we cannot say that Judge Price improperly compelled Elton Dyess to arbitrate even though he is a nonsignatory as to the contract in which the arbitration clause appears. Therefore, we deny the petition for the writ of mandamus.

I. The Federal Arbitration Act applies to this case because interstate commerce is involved.

Before we address Dyess's claims, we must first determine whether the Federal Arbitration Act could apply. Dyess argues that it does not apply because, he says, his claims do not involve interstate commerce and are not based on a transaction that involved interstate commerce. We disagree; his claims clearly involve or are based on an insurance agreement that involved, interstate commerce. American Hardware is an Indiana corporation and Jack Ingram Motors is an Alabama corporation.
In Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the United States Supreme Court analyzed § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, which addresses the "commerce" requirement. Section 2 provides:
"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
The United States Supreme Court broadly interprets the phrase "involving commerce." That Court has said, "After examining the statute's language, background, and structure, we conclude that the word `involving' is broad and is indeed the functional equivalent of `affecting.'" AlliedBruce Terminix, at 273-74. The Supreme Court held that the term "involving commerce" was intended to reach to the limits of Congress's Commerce Clause power. Id., at 273, 115 S.Ct. at 839. Based on this analysis, we conclude that the policy issued by American Hardware to Jack Ingram Motors involves interstate commerce because the policy was between corporations of different states. Therefore, the Federal Arbitration Act applies, and it preempts any state law to the contrary. See Terminix International Co. Ltd. Partnership v. Jackson, 669 So.2d 893, 895 (Ala.1995). There are commercial transactions in which the involvement of interstate commerce is tangential. However, a transaction between two companies located in separate states is not one of those transactions. Substantive federal law on arbitration controls in any case where there is a conflict between federal law and Alabama law. Id., at 895.

II. Dyess can be compelled to arbitrate even though he is a nonsignatory.

Dyess's most persuasive argument is that he should not be required to arbitrate because he did not sign the contract that contained the arbitration clause American Hardware seeks to enforce. Dyess is suing American Hardware under the uninsured motorist provision in the policy American Hardware issued to Jack Ingram Motors. In effect, Dyess is a third-party beneficiary of the policy between American Hardware and Jack Ingram Motors. "A party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." Weathers Auto Glass, Inc. v. Alfa Mutual Ins. Co., 619 So.2d 1328, 1329 (Ala.1993). The policy was written with the intent of directly benefiting people such as Dyess, who was injured while *451 test-driving an automobile belonging to Jack Ingram Motors.
Dyess seeks to benefit from the policy. However, he is attempting to avoid the arbitration clause found in the policy. He cannot pick and choose the portions of the contract that he wants to apply. Jack Ingram Motors would have to arbitrate any claim against American Hardware; we conclude that Dyess must arbitrate any claim that he has under the policy against American Hardware.
In Allied-Bruce Terminix, Justice Breyer said:
"States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause `upon such grounds as exist at law or in equity for the revocation of any contract.' What states may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The [Federal Arbitration] Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal `footing,' directly contrary to the Act's language and Congress' intent."
Allied-Bruce Terminix at 281, 115 S.Ct. at 843 (emphasis omitted; emphasis added).
One of the "basic terms" of the contract at issue in this case is the uninsured motorist clause, which allows Dyess to assert a claim against American Hardware based on injuries caused by an uninsured motorist. To enforce that portion of the contract and not to enforce the arbitration clause would produce a result inconsistent with the Federal Arbitration Act and with decisions of the United States Supreme Court. It is also important to realize that Dyess will not be denied a recovery by the requirement that he arbitrate his claim. If he wants to recover compensation under the policy, then, just as the signatory (Jack Ingram Motors) agreed to do, he must pursue his claim through arbitration rather than through litigation.
We further conclude that Dyess's claims should be arbitrated because they are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause. See e.g., Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993). Dyess's claims against American Hardware are so closely related to the insurance policy that Dyess must follow its terms even though he did not sign it. In addition, Dyess's claims would not exist but for the contract between Jack Ingram Motors and American Hardware.
The United States District Court for the Southern District of Alabama has held:
"In limited circumstances, one who is not a signatory or direct party to [a written agreement that involves interstate commerce and contains an arbitration clause], but whose position or conduct vis-a-vis that contract or one of the parties thereto is such that one may be deemed a third-party beneficiary of the contract or otherwise held to be bound by the terms thereof, may be compelled to arbitrate a dispute arising out of or relating to the contract."
Dunn Constr. Co. v. Sugar Beach Condominium Ass'n, Inc., 760 F.Supp. 1479, 1482 (S.D.Ala.1991). See also McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir.1984); Hughes Masonry Co. v. Greater Clark County School Bldg. Corp., 659 F.2d 836 (7th Cir.1981).
In Dunn Constr. Co., a contract existed between Dunn and Shoreline for the construction of a condominium project. The contract contained an arbitration clause. Altus Bank agreed to finance the construction. A dispute arose between Dunn and Shoreline, and Altus Bank intervened to recover money spent in repairing the allegedly defective condominium project. Altus Bank also sought recovery as obligee of the completion bond issued for Dunn. The court used the third-party beneficiary rationale, coupled with an equitable estoppel analysis, to rule that Altus Bank was subject to the arbitration clause in the contract between Dunn and Shoreline. We believe the present case involves circumstances similar to those presented in Dunn Constr. Co. Dyess did not sign the agreement to arbitrate, but, in order to benefit from the contract containing that *452 agreement, he must comply with the entire contract.
Other states have ruled similarly with respect to arbitration. In a case involving a similar dispute over arbitration, the Court of Appeals of Arizona has held that a party seeking coverage under an uninsured motorist provision must follow all of the terms of the policy. Jeanes v. Arrow Ins. Co., 16 Ariz.App. 589, 494 P.2d 1334 (1972). "[The party seeking coverage under the policy] has become a third party beneficiary of the contract. The rights here involved were created by that contract, and in order to accept benefits under that contract she must accept and abide by the terms of the contract." 16 Ariz.App. at 592, 494 P.2d at 1337. In another case involving a party that was trying to avoid arbitration because it had not signed an agreement to arbitrate, the Court of Special Appeals of Maryland quoted Williston on Contracts, § 364A (3d ed. 1957): "Where the contract contains an arbitration clause which is legally enforceable, the general view is that the beneficiary is bound thereby to the same extent that the promisee is bound." District Moving & Storage Co., Inc. v. Gardiner & Gardiner, Inc., 63 Md.App. 96, at 102, 492 A.2d 319, at 323 (1985).
Dyess is an intended beneficiary of the uninsured motorist policy. Although American Hardware and Jack Ingram Motors did not intend for Dyess in particular to benefit from the policy, they did intend to benefit people in Dyess's situation. We agree with the reasoning employed by Professor Williston. It would be unfair to American Hardware to allow Dyess to sue as an insured under the policy without enforcing against him the arbitration provision. When American Hardware agreed to insure Jack Ingram Motors, it did so with the understanding that disputes concerning the contract would be arbitrated. Therefore, we cannot say that Dyess had a clear right not to be compelled to arbitrate his claims against American Hardware, even though he did not sign the contract that contained the arbitration agreement.

III. The exceptions set out within the arbitration clause do not prevent arbitration of Dyess's claims.

Dyess argues that even if the arbitration clause would otherwise apply to this case, the exceptions set out within the clause prevent it from operating as to his claims. Dyess refers to the statement in the arbitration clause: "However, disputes concerning coverage under this endorsement [the uninsured motorist provision] may not be arbitrated." Dyess claims that this exception should apply because American Hardware initially denied coverage. As stated above, Tonya Roberts mistakenly denied Dyess's claim because Roberts had failed to consider the uninsured motorist endorsement of the policy, which would provide insurance benefits to Dyess. American Hardware no longer alleges that Dyess is not covered. It admits that Dyess qualifies as an "insured" under the policy. Therefore, there is no dispute concerning coverage. This exception in the policy does not apply.
Dyess makes an additional argument, suggesting that, by its own terms, the arbitration clause does not apply. For this argument, Dyess relies on paragraph 2 of the clause, which states: "This arbitration provision will not apply if legal action has been commenced by the `insured' against the owner or operator of an `uninsured motor vehicle'." Dyess argues that this sentence should apply and, as applied, should relieve him of the obligation to arbitrate, because he included a fictitiously named person as a defendant in his complaint. Dyess claims that he (an "insured") has "commenced" a "legal action ... against the owner or operator of an `uninsured motor vehicle'." He argues that the operator of the uninsured motor vehicle is the party fictitiously named in his complaint. However, the operator of the vehicle that turned in front of Dyess has never been located, and, thus, has not been served with process in regard to Dyess's lawsuit. Therefore, Dyess has not satisfied that exception to the arbitration clause, either.
The beginning of trial operates as a dismissal of fictitiously named parties. Ala. R.Civ.P. 4(f). If we accepted Dyess's argument, then American Hardware would not be able to demand arbitration until the trial of the case had begun. By that time, Dyess *453 would be able to successfully assert a waiver argument in opposition to American Hardware's motion to compel arbitration. This portion of the arbitration clause ("This arbitration provision will not apply if legal action has been commenced by the `insured' against the owner or operator of an `uninsured motor vehicle'") refers to a situation different from the one presented here. If there was a legal action pending between Dyess and a real party, then an arbitration proceeding would present a procedural conflict. American Hardware included that exception in the policy because it recognized that it could not use general contract principles to compel a tortfeasor/driver into an arbitration proceeding. Allowing a claimant to avoid the effect of the arbitration clause by adding fictitiously named parties would totally undermine the arbitration clause. We do not think the drafter intended to allow an insured to undermine the contractual provision with respect to arbitration by adding fictitiously named parties in the complaint. Arbitration must cease if Dyess should find and serve the fictitiously named party and add that party as a defendant in the legal action. Should that happen, the express terms of the arbitration provision would require that Dyess's claims return to the trial court for litigation.

IV. American Hardware has not waived its right to demand arbitration.

Dyess argues that American Hardware substantially invoked the litigation process and thereby waived any right it may have had to demand arbitration. Dyess argues that American Hardware, by initially denying coverage, has, in effect, forced Dyess to sue in order to collect the benefits he claims he was entitled to under the policy. Thus, Dyess argues that this denial of coverage was enough to "substantially invoke" the litigation process. This case has involved very limited discovery, and American Hardware's only action was the filing of an answer. Dyess argues that several months passed between the time that the dispute arose and the time American Hardware demanded arbitration, and he claims that this delay prejudiced him. We agree with American Hardware that answering a complaint does not "substantially invoke" the litigation process. The trial judge determined that American Hardware had not waived its right to demand arbitration. We cannot say that he erred in that determination.
As authority for this waiver argument, Dyess cites Ex parte Prendergast, 678 So.2d 778 (Ala.1996). In that case, this Court held that a party had waived the right to demand arbitration, by failing to demand it within a reasonable time. We first note that the Prendergast case involved a provision in the arbitration agreement that stated: "Notice of demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen." See 678 So.2d at 779. The arbitration clause in the policy between American Hardware and Jack Ingram Motors contains no such "reasonable time" provision. The absence of such a provision affects the application the Prendergast holding might have to Dyess's case.
In Prendergast, the Prendergasts had contracted with Knobloch to build a house. The house was completed, and the Prendergasts moved into the house. After noticing some defects, they claimed a set-off against money owed to Knobloch. Knobloch filed a lien, the Prendergasts filed a declaratory judgment action, and, as holder of a mortgage covering the house, Knobloch began foreclosure proceedings. The Prendergasts amended their complaint, to seek a preliminary injunction; the trial court denied that injunction. Knobloch answered and filed a counterclaim, which was later satisfied. With regard to the Prendergasts' still-pending claim, Knobloch demanded arbitration. This Court held that Knobloch's actions constituted a waiver of the right to arbitrate and that the Prendergasts had been prejudiced by the delay. Thus, Dyess's case and the Prendergasts' case have significant factual differences. American Hardware filed an answer, but it did not invoke the litigation process to the extent that Knobloch invoked it.
The Court in Prendergast also considered the fact that Knobloch appeared to have chosen to forgo arbitration by choosing litigation as the means for resolving the dispute.
*454 American Hardware attempted to settle this case rather than litigate it. A party claiming that another party has waived its right to arbitrate its dispute normally must show more than the mere passage of time. This Court determines on a case-by-case basis whether a party has waived the right to compel arbitration. Ex parte Merrill Lynch, Pierce, Fenner, & Smith, Inc., 494 So.2d 1 (Ala.1986). Also, a party seeking to prove a waiver of the right to arbitrate has a heavy burden. Id. Dyess has not been prejudiced by American Hardware's delay in demanding arbitration, and we conclude that Dyess has not shown that American Hardware waived its right to compel arbitration. Therefore, Dyess has not shown that he has a clear right to the relief requested.

V. Dyess's claims alleging fraud, bad faith, and the tort of outrage may properly be arbitrated.

Dyess argues that his claims alleging fraud, bad faith, and the tort of outrage may not be arbitrated because, he contends, the arbitration clause applies only to disputes as to whether the insured is entitled to recover damages or disputes as to the amount of damages that are recoverable. He argues that these three claims do not involve any dispute as to entitlement to insurance benefits or as to the amount of benefits. Dyess has not shown that the arbitration agreement is not broad enough in scope to cover these three claims against American Hardware and that he therefore has a clear right to the writ of mandamus.
American Hardware and Jack Ingram Motors could have excluded such claims from arbitration in their original contract if they had desired to do so. "[I]n order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." H.L. Fuller Constr. Co. v. Industrial Dev. Bd., 590 So.2d 218, 222 (Ala. 1991). There was no such express provision in the American Hardware policy. The parties to this insurance contract expressly excluded two kinds of claims from the effect of the arbitration clause. The fact that they excluded these two kinds of claims, but did not exclude the claims Dyess now argues should be excluded, is evidence that they intended not to exclude claims of the kind presented here. They easily could have excluded claims such as fraud, bad faith, and outrage if they had intended to exclude such claims. These claims qualify under the contract language as arbitrable claims.
The Court of Appeals for the Eleventh Circuit has said, "[I]t is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984). Also, that court has stated: "[A]rbitration clauses are to be generously construed and all doubts are to be resolved in favor of arbitration." Ruby-Collins, Inc. v. City of Huntsville, 748 F.2d 573, 576 (11th Cir.1984).
We agree with the trial court that American Hardware had not waived its right to arbitrate the question of the amount of benefits Dyess was entitled to under the uninsured motorist coverage of the policy. Whether Dyess must arbitrate his claims of fraud, bad faith, and the tort of outrage depends on whether American Hardware unreasonably delayed its request for arbitration. If its delay in seeking to compel arbitration was unreasonable, then the trial court should have denied the motion to compel arbitration, on the basis that American Hardware had waived the right to arbitrate. The trial court found no unreasonable delay, and we agree with its decision. Dyess's claims of fraud, outrage, and bad faith bear directly upon Dyess's disagreement with American Hardware as to the amount of uninsured motorist benefits he was entitled to. We agree with Judge Price that the fraud, outrage, and bad faith claims should be arbitrated.

VI. Conclusion

We conclude that Judge Price did not err in granting American Hardware's motion to compel arbitration. Elton Dyess may be entitled to insurance benefits and damages from American Hardware, but any recovery must result from arbitration rather than litigation. *455 Therefore, we deny the petition for the writ of mandamus.
PETITION DENIED.
MADDOX, HOUSTON, and SEE, JJ., concur.
SHORES, KENNEDY, and COOK, JJ., concur in the result.
BUTTS, J., dissents.
COOK, Justice (concurring in the result).
I concur in the result because the arbitration agreement is contained within the same contract under which the plaintiff asserts his claims against American Hardware. Although it originally disputed the matter, the defendant American Hardware conceded before the hearing on the motion to compel arbitration that the plaintiff Elton Dyess is an "insured" under the insurance policy between Jack Ingram Motors and American Hardware. In pertinent part, the liability coverage section of the policy provides:
"Who Is An Insured
"a. The following are `insureds' for covered `autos':
"(1) You for any covered `auto.'
"(2) Anyone else while using with your permission a covered `auto' you own, hire or borrow...."
Because Elton Dyess is an "insured" under the language of the policy, I will not address whether he is also a third-party beneficiary. He is bound by the arbitration agreement included in the policy because he is an insured and is seeking coverage pursuant to the policy. The plaintiff cannot pick and chose what portions of the policy are applicable to him. Furthermore, this case is factually distinguishable from Ex parte Isbell, [Ms. 1951384, August 29, 1997] (Ala.1997). In Isbell, we held that the relationships between the parties were separate and distinct and were not interrelated. However, in this case, the parties share an integral relationship, and the plaintiff must therefore submit his claim to arbitration pursuant to the agreement between Jack Ingram Motors and American Hardware.
KENNEDY, J., concurs.
BUTTS, Justice (dissenting).
I respectfully dissent. I would hold that American Hardware's protracted and unexplained delay in seeking arbitration of the Dyesses' claims constituted a waiver of its right to compel arbitration. See Ex parte Smith, 706 So.2d 704 (Ala.1997).
NOTES
[1] See also Zimmerman v. Lloyd Noland Foundation, 582 So.2d 548 (Ala.1991); Weaver v. Allstate Ins. Co., 574 So.2d 771 (Ala.1990); Price v. Southern Ry., 470 So.2d 1125 (Ala.1985).